# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:15-cv-01431-JRG-RSP |
| GUARDIAN PROTECTION SERVICES, INC., | § § § | LEAD CASE |
| Defendant. | § § § | |
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:15-cv-01463-JRG-RSP |
| ADS SECURITY, LP | § § | CONSOLIDATED CASE |
| Defendant. | § § § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT ADS SECURITY, LP's MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Rothschild Connected Devices Innovations, LLC respectfully files this Opposition to Defendant ADS Security, LP's Motion for Judgment on the Pleadings of Invalidity Under 35 U.S.C § 101 and Brief in Support of Same ("Motion").

I.      INTRODUCTION

Defendant's Motion contends that the case should be dismissed because the patent-in-suit is ineligible for patent protection under 35 U.S.C. §101 ("§101").  In support of this proposition, Defendant cites the decision of the Supreme Court in *Alice*.  Stripping the Motion of irrelevant

rhetoric, Defendant's argument is that (1) Claim 1 of the patent-in-suit recites nothing more than the abstract idea of product configuration and (2) Claim 1 does not recite meaningful limitations that would move the claim from the realm of patent ineligibility.   The first part of Defendant's argument ignores claim elements directed to tangible components and the communication network recited in Claim 1.   It also ignores the additional recited features and components that dictate the operation of that communication network and the specific improvement to a communication network that those additional components represent.   The second part of Defendant's argument simply ignores virtually every element and limitation recited in Claim 1.

The Court should deny the Motion because the claims of the patent-in-suit, including asserted Claim1, are not directed to an abstract idea.   And, even if one or more claims was determined to be directed to an abstract idea, the claims recite additional elements that transform the nature of the claims into a patent-eligible applications of the abstract idea.   Asserted Claim 1 is directed to a communication network, which performs several functions.   It includes tangible components.   The invention recited therein overcomes a problem specifically arising in the realm of computer networks.   It neither involves a building block of ingenuity, nor does not seek to monopolize a fundamental financial or business idea.   It also does not merely recite functionality that could be performed by human hand.   Claim 1 recites elements that improve the functioning of a computer platform or network itself.   In short, all of the factors of the Alice decision, and the analysis under Section 101, point to the patent eligibility of Claim 1 and the other claims of the patent-in-suit.

## II.     LEGAL STANDARD

### A.     Motions for Judgment on the Pleadings are Viewed with Disfavor

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to

state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

Regional circuit law applies to motions to dismiss for the failure to state a claim under Rule

12(b)(6), Fed.R.Civ.P. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed.Cir. 2007).  The

standard for deciding a Rule 12(b)(6) motion has been summarized by the Court of Appeals for

the Fifth Circuit as follows:

> A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely
> granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045,
> 1050 (5th Cir. 1982).  The complaint must be liberally construed in favor of the
> plaintiff, and all facts pleaded in the complaint must be taken as true.  *Campbell v.
> Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).  The district court may not
> dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the
> plaintiff can prove no set of facts in support of his claim which would entitle him
> to relief."

*Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (citations omitted); see

*Phonometrics, Inc. v. Hospitality Franchise Systems*, 203 F.3d 790, 793-794 (Fed.Cir. 2000) ("the

dismissal standard is extraordinary, and one not to be taken lightly"; a motion to dismiss "is viewed

with disfavor and rarely granted." (citing and quoting *Brooks v. Blue Cross & Blue Shield of Fla.,

Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997))).

It is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of

patentable subject matter… because every issued patent is presumed to have been issued properly,

absent clear and convincing evidence to the contrary*." Ultramerical, Inc. v. Hulu, LLC*, 722 F.3d

1335, 1338-39 (Fed.Cir. 2013) (vacated on other grounds by sub nom. *Wildtangent, Inc. v.*

*Ultramerical, LLC*, 573 U.S. __, 134 S.Ct. 2870 (2014)); *Card Verification Solutions, LLC v. Citigroup Inc.*, 2014 U.S. Dist. WL 4922524 at *2 (N.D. Ill. Sept. 29, 2014).

Although ineligibility under §101 is a question of law, it is "rife with underlying factual issues." *Ultramerical*, 722 F.3d at 1338-39; *The California Inst. of Tech. v. Hughes Comm., Inc.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014).  And, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a §101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Services v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed.Cir. 2012).  A dismissal under §101 is therefore only appropriate "when the only plausible reading of the patent is that there is clear and convincing evidence of ineligibility." *Calif. Inst. of Tech.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (citing *Ultramerical*, 722 F.3d at 1339); *also Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, slip op. at 16-17 (D.N.J. Aug. 19, 2014) (Ex. B); *Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*, 2014 WL 1998053 at *3 (E.D. Tex. May 15, 2014).

Courts have therefore ruled on ineligibility under §101 after claim construction and on summary judgment thereby allowing factual issues to be developed and claim terms to be construed prior to issuing a decision. *E.g., Ameranth, Inc. v. Genesis Gaming Solutions, Inc.*, Case No. 8:11-cv-189, slip op. (C.D. Cal. Nov. 12, 2014) (Ex. C) (denied summary judgment of invalidity under §101); *Calif. Inst. of Tech.*, 2014 U.S. Dist. WL 5661290 at n. 6 (same); *Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12-081-LPS, slip op. at 31-38 (D.Del. Sept. 18, 2014) (Ex. D) (same); *AutoForm Eng'g GmbH v. Eng'g Tech. Assoc., Inc.*, 2014 WL 4385855 (E.D. Mich. Sept. 5, 2014) (same); *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (granted summary judgment of invalidity under §101 only

after discovery and claim construction); *Data Distrib. Techs*., slip op. at 16-23 (Ex. B) (declining Rule 12(b)(6) motion of invalidity under §101 as premature due to lack of a claim construction); *Netflix, Inc. v. Rovi Corp*., Case No. C 11-6591 PJH, slip op. (N.D.Ca. Dec. 22, 2014) (Ex. E) (holding that a §101 motion would only be heard after claim construction); *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc*., Case No. 8:13-cv-2240-T-33MAP, slip op. (M.D. Fl. Feb. 9, 2015) (Ex. F) (denying §101 motion as premature pending claim construction).

     B.     Patent Eligibility under 35 U.S.C. §101

     Section 101 defines patent eligible subject matters as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. §101.  "In choosing such expansive terms . . . modified by the comprehensive `any,' Congress plainly contemplated that the patent laws would be given wide scope." *Bilski v. Kappos*, ___ U.S. ___, 130 S.Ct. 3218, 3225, 177 L.Ed.2d 792 (citing *Diamond v. Chakrabarty*, 447 U.S. 303, 308, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1981)).  "Congress took this permissive approach to patent eligibility to ensure that 'ingenuity should receive a liberal encouragement.'" Id. (citing 447 U.S. at 308-309, 100 S.Ct. 2204); see *DDR Holdings, LLC v. Hotels.com, L.P*., 954 F.Supp.2d 509, 524-525 (E.D. Tex. 2013).  Also, it is well-known that issued patent claims carry a statutory presumption of validity.  *DDR Holdings*, 954 F.Supp.2d, at 525.  And, that presumption applies when §101 is raised as a basis for challenging validity in district court proceedings.  *Id*.

     There are only three exceptions that are excluded from patent eligible subject matter under §101: laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. ___, 134 S.Ct. 2347, 2354 (2014).  The basis for these exceptions is that patenting basic tools of scientific and technological work, which the Supreme Court referred to as the

building blocks of ingenuity, would tend to impede innovation rather than to promote it.  *Id.* However, all inventions in effect embody, use, or apply laws of nature, natural phenomena, or abstract ideas so an invention is not patent-ineligible merely because it involves an abstract concept.  *Id.* Although patenting a building block of ingenuity would risk disproportionately tying up the use of the underlying ideas, integrating the building blocks into something more "pose[s] no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 2354-55.

 *Alice* presents a two-step test for determining patent eligibility.  The first step "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 134 S.Ct. at 2355.  If the Court finds that the patent is not directed to a patent ineligible concept, i.e., the patented invention is not an abstract idea, then the analysis ends there and the motion to dismiss under §101 must be denied.  If, however, the Court finds that the patented invention is directed to a patent ineligible concept, then the Court turns to the second step and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S.Ct. at 2357 (citing *Mayo Collaborative Serv. v. Prometheus Labs.*, Inc., 566 U.S. ___, 132 S.Ct. 1289, 1294, 1298 (2012); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 155 (Fed Cir. 2014). Under the second step, even if an invention recites an abstract idea, the invention is patentable if it has additional features to ensure that the claim is more than drafted to monopolize an abstract idea.  *Id.* When considering the inventive concept of claim limitations, the limitations are considered both individually and as an ordered combination. *Id.* at 2355.

 One non-exclusive test for analyzing patentability under §101 for method claims is the "machine-or-transformation test."  *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218, 3227 (2010).

A method is patentable under this test if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." Id. at 3226-27 (citing *In re Bilski*, 545 F.3d 943, 954 (Fed.Cir. 2008)).

In the Federal Circuit's decision in *DDR Holdings,* 773 F.3d at 1248.  In *DDR Holdings*, the Federal Circuit addressed whether claims directed to "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" were patentable. 773 F.3d at 1248.  After analyzing relevant precedent, the Court began the two-step analysis by finding that the asserted claims did not recite a mathematical algorithm, or a fundamental economic or longstanding business practice. *Id*., at 1257. Furthermore, the Court found that "[a]lthough the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet." *Id*.  The Court held that the claims stood apart from prior cases because the claims were addressing a problem particular to computer technology:

> But these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*Id*.  Inventions are therefore patentable under §101 if the claims do not attempt to preempt every application of an idea and instead recite a specific way of solving a computer-based problem.  *Id*., at 1259.  The Federal Circuit then held that the claims directed to the software implemented invention were patent eligible under §101.  *Id*.

III.    ARGUMENT

   A.    The Claims of the Patent-in-suit are Patent Eligible

Defendant's Motion should be denied because, when the facts are liberally construed in favor of Plaintiff, Defendant does not satisfy its high burden of proving invalidity by clear and convincing evidence.  First, the patent-in-suit is not directed to an abstract idea because the claimed invention solves problems specifically found in the realm of computer technology. Defendant's alleged "abstract idea" is neither applicable to, nor an accurate representation of, the claims of the patents-in-suit.  Second, even if the Court were to find that the claims are directed to an "abstract idea," the claims have additional features to ensure that the claims are directed to more than an abstract idea.

> 1.    The Claims of the Patent-in-Suit do not Recite an Abstract Idea

The claimed inventions are patent eligible under §101 because they do not recite an abstract idea.  The first step in a §101 analysis is to "determine[s] whether the claims at issue are directed to one of [the] patent-ineligible concepts." *Alice Corp.*, 134 S.Ct. at 2355.  Defendant contends that the claims are directed to the patent-ineligible concept of an abstract idea. However, the claims do not merely recite a mathematical algorithm, an economic practice, a pre-computer business practice, or a computer performing a non-essential function. Instead, the claims are rooted in computer technology that necessarily requires a computer system, a communication network, a product, and a communication module within the product, all of which are representative of patent-eligible subject matter.

Claim 1 of the patent-in-suit recites:

> A ***system*** for customizing a ***product*** according to a user's preferences comprising:
> ***a remote server including a database configured to store a product preference*** of a predetermined product for at least one user; and
> ***a first communication module within the product and in communication with the remote server***;

> ***wherein the remote server is configured to receive the identity of the predetermined product and the identity of the at least one user, retrieve the product preference from the database based on the identity of the predetermined product and the identity of the at least one user and transmit the product preference to the first communication module.***

U.S. Patent No. 8,788,090, Claim 1 (emphasis added).

Defendant seeks to boil Claim 1 down to two words – "product configuration" – and then argue that Claim 1 is abstract because "product configuration" is not a novel concept. Defendant's argument, however, utterly ignores all of the elements and limitations recited in Claim 1. Ex. A, Qiu Decl., ¶ 6.

This is not merely "product configuration." Rather, this is a computer-based, network communication system that stores and transmits specific information among multiple hardware components to achieve a customized, tangible product. *Id.* The invention recited in Claim 1, for example, deals not so much with product configuration as it does with receiving, storing, and transmitting specific information over a computer-based communication network. *Id.* The claimed invention concerns what information is transmitted, as well as how and under what circumstances the information is transmitted between components in order to customize a product. *Id.*

Defendant, of course, relies heavily on the *Alice* decision. *Alice* did not deal directly with software or computer-related inventions and most certainly did not hold that software and/or computer related inventions could not present patentable subject matter. *Alice* concerned a scheme for mitigating settlement risk, i.e., the risk that only one party to an agreed-upon financial exchange will satisfy its obligation. The Court held that the claims directed to this scheme were not patentable subject matter under §101 because they were drawn to the abstract idea of "intermediated settlements" and generic computer implementation, alone, did not transform the

abstract idea into something patentable. *Alice*, 134 S. Ct. at 2350-51. The Court was also concerned with distinguishing patents that "claim the 'building[g] block[s]' of human ingenuity which are ineligible for patent protection, from those that integrate the building blocks into something more." *Id.* at 2350.

The claims of the patent-in-suit, however, are not directed to an "abstract idea" and do not present any fundamental building blocks of human ingenuity. Ex. A, Qiu Decl., ¶ 7. And, even if it is true that the claims rely on "building blocks," they most certainly integrate those building blocks into something more.

Defendant's entire basis for arguing that Claim 1 of the '090 Patent is directed to an abstract idea is a list of the cases in which the '090 Patent has been asserted, coupled with a reference to an article by the Electronic Frontier Foundation. There is *literally nothing else* offered by Defendant to support its argument. Indeed, Defendant hardly puts forth any argument at all. As to the list of cases noted by Defendant, this is no evidence that Claim 1 is directed to an abstract idea. Rosthchild is certainly free to assert its patent in different technology sectors. Defendant would have us believe that simply due to the number of cases, and the different products involved, the patent-in-suit is being asserted against every existing industry segment. This is ludicrous. Moreover, there is *no support at all* for making the leap from merely noting that a patent is asserted in multiple product areas to claiming that patent is somehow directed to an abstract idea.

As to the article by the Electronic Frontier Foundation ("EFF"), that is equally suspect. The EFF is an organization that is known for supporting any efforts that are counter to activities by non-practicing entities ("NPEs"). Its bias against NPEs is notorious. An article by such a biased entity claiming that Rothschild is attacking the "Internet of Things" is not evidence of that actually being the case and it is most certainly not evidence that is even relevant to a determination

PLAINTIFF'S OPPOSITION TO DEFENDANT ADS SECURITY, LP's
MOTION FOR JUDGMENT ON THE PLEADINGS                                                    10

of whether a claim of the '090 Patent is directed to an abstract idea under *Alice*. Yet, Defendant cites the EFF article as if whatever is said in the article is fact.

Again, what cannot be overlooked is that the totality of Defendant's evidence and argument that Claim 1 of the '090 Patent is directed to an abstract idea is the list of Rothshchild cases and the reference to the EFF article. That is all there is. Defendant has not come close to satisfying its heavy burden of showing, by clear and convincing evidence, that Claim 1 of the '090 Patent is directed to an abstract idea.

> 2. Even if the Claims are Directed to an Abstract Idea, They Recite Additional Elements and Limitations That Render Them Patent Eligible

If the Court determines that the claims are directed to an abstract idea, then the analysis turns to step two of *Alice*. The second step involves determining whether additional elements of the claim transform the nature of the claim into a patent-eligible application of that abstract idea. *Alice Corp.*, 134 S.Ct. at 2357.

Claim 1 of the '090 Patent recites, among other things, the following meaningful, non-generic and inventive limitations:

- *system for customizing a product according to a user's preferences*

- *a remote server including a database configured to store a product preference of a predetermined product*

- *a first communication module within the product and in communication with the remote server*

- *the remote server is configured to receive the identity of the predetermined product and the identity of the at least one user, retrieve the product preference from the database based*

*on the identity of the predetermined product and the identity of the at least one user and transmit the product preference to the first communication module.*

The system, as recited, operates in a specific way, performing specific functions, to overcome problems specifically arising computer-based communication networks.   The components of the claimed system receive, store, organize, and transmit user information between the components in a specific manner.   Ex. A, Qiu Decl., ¶¶ 5 and 6.

Defendant suggests that Claim 1 only recites two pieces of hardware and that those two pieces are "generic."   Defendant's argument ignores the recitations of Claim 1 as a whole and further ignores the additional elements recited in Claim 1.   Taken as a whole, Claim 1 recites a "system," which includes a communication module and a remote server.   If one stops there, then it is tempting to accept Defendant's argument.   However, the recited system is "for customizing a product according to a user's preferences . . . ."   This is not a generic computer or component.   Ex. A, Qiu Decl., ¶ 8.   The first communication module is "within the product and in communication with the remote server . . . ."   This is not a generic computer or component.   *Id.*   The remote server "is configured to receive the identity of the predetermined product and the identity of the user."   This is not a generic computer or component.   *Id.*   The remote server is further configured to "retrieve the product preference from the database based on the identity of the predetermined product and identity of the at least one user and transmit the product preference to the first communication module."   Just as with the other elements, this is not a generic computer or component.   *Id.*

As stated in the specification of the '090 Patent, "[t]he system and method of the present disclosure enables a user to customize products . . . by allowing a server communicating over the global computer network . . . to provide product preferences of a user to a product."   '090 Patent,

Abstract (Emphasis added); *see also*, Ex. A, Qiu Decl., ¶ 10.  This includes "identifying a product to a server over the network; identifying a user to the server over the network; retrieving the user's product preferences from a database at the server based on the product's identity and user's identity; [and] transmitting the user's product preferences to the product over the network . . . ." *Id.*

In an example embodiment, a user enters product preferences via a terminal, which accesses a server.  Col. 2, l. 59 through col. 3, l. 11; *see also*, Ex. A, Qiu Decl., ¶ 11.  The product preferences are stored in a database for future use.  *Id.* The server transmits this information to the product via a communication module, which may include a hardware or wireless interface to interface with the product.  *Id.*  The terminal and server may operate in a networked environment using logical connections to one or more remote computers.  Col. 3, l. 54 through col. 4, l. 8; *see also*, Ex. A, Qiu Decl., ¶ 11.  Once a user's product preferences are established, the server communicates the information to the terminal, and the communication module transmits the information to the product (e.g., through the product container or housing, using communication protocols such as Bluetooth or WiFi).  *Id.*  The communication module receives the information and sends the information to a controller on the product.  Col. 5, l. 54 through col. 6, l. 6; see also, Ex. A, Qiu Decl., ¶ 11.

The '090 Patent specification highlights that the claims do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet or a generic computer.  Rather, the claimed invention is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer-based communication networks.  Ex. A, Qiu Decl., ¶ 12.  Clearly, the recitations of Claim 1, for example, take the claimed invention far beyond Defendant's asserted

abstract idea of "product configuration."  Moreover, the claimed invention in no way preempts any fundamental business or financial concept, such as Defendant's asserted "product configuration" allegedly would.  Ex. A, Qiu Decl., ¶ 7.

Defendant also suggests that the "additional limitations" of Claim 1 consist of two computer-based limitations ("server" and "communication module") and "the abstract idea of storing product configuration data for a user and sending that data when requested."  Motion, at 7. Defendant further states that when the hardware components are set aside, what remains is "nothing patentable" and that the remaining elements are "hardly inventive."  First, this gross simplification of Claim 1 ignores the vast majority of its elements and limitations.  Defendant cannot simply read those elements out of Claim 1 because it needs to in order to make its argument. Second, whether the elements of Claim 1 beyond the hardware components are "patentable" or "inventive" is not the issue.  Patentability and novelty are not under consideration.  The issue is whether the additional elements (*all of the additional elements*) transform a supposed abstract idea into something that is *patent eligible*.

B.      At a Minimum, the Motion is Premature

Finally, there are factual disputes and claim construction issues that require denying the motion to dismiss as premature.  Defendant's Motion fails to satisfy its high burden of proving that there is only one plausible reading of the claims that results in clear and convincing evidence of patent ineligibility.  Regardless of whether the evidence demonstrates that the claims are patentable under §101, at a minimum, Defendant has not satisfied its burden of showing the absence of material issues of fact or claim construction issues. As demonstrated above, Defendant has failed (miserably) to show by clear and convincing evidence that there is only one plausible reading of the claims of the patent-in-suit that would invalidate on the grounds of subject matter.

Plaintiff has raised many factual issues, including the facts supported by the Qiu Declaration, regarding whether the claims are directed to an abstract idea, the extent of the preemption of the asserted claims, and the available alternatives to the claimed inventions. These facts, when liberally construed in favor of the plaintiff, dictate a finding that Claim 1 of the '090 Patent recites patent eligible subject matter.

Finally, at a minimum, there claim construction issues that make consideration of the Defendant's Motion premature. For instance, Plaintiff has raised several claim elements as needing construction in order to make a determination under Section 101. These include:

- "customizing a product according to a user's preferences"

- "communication module"

- "predetermined product"

- "identity of the at least one user"

- "identity of the predetermine product"

Construction of these terms will likely impact such issues as whether Claim 1 is directed to an abstract idea and, if so, whether Claim 1 includes additional claim elements that transform the idea into patent eligible subject matter. These are claim construction issues that should be decided prior to rendering a decision on Defendant's Motion.

## IV.   CONCLUSION

Defendant's Motion should be denied. The claims are not directed to an abstract idea and cannot be properly boiled down to "product configuration" as Defendant would contend. Defendant has wholly failed in its burden to present facts and argument as to why a list of cases

and a reference to an Internet article by an organization predisposed against NPEs equates to a bare conclusion that Claim 1 is directed to "product configuration."  Even if the Court determines that Claim 1 is, in fact, directed to an abstract idea, the claims recite many additional elements and limitations that transform that abstract idea into something patent eligible – and something that does not impinge on the free use of any fundamental building blocks of human ingenuity. Moreover, there are material facts in dispute and Defendant's Motion is based almost completely on rhetoric and gross oversimplification of claim terms.  The meaning of various claim terms needs to be resolved prior to a decision.  For all of the foregoing reasons, Defendant's Motion should be denied.

Dated:  December 11, 2015

/s/ Jay Johnson
**JAY JOHNSON**
State Bar No. 24067322
**D. BRADLEY KIZZIA**
State Bar No. 11547550
**KIZZIA JOHNSON PLLC**
750 N. St. Paul Street, Suite 1320
Dallas, Texas 75201
(214) 613-3350
Fax: (214) 613-3330
jay@kjpllc.com
bkizzia@kjpllc
**ATTORNEYS FOR PLAINTIFF**

### Certificate of Service

I hereby certify that on December 11, 2015, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Jay Johnson
Jay Johnson