# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | |
| GUARDIAN PROTECTION SERVICES, INC. | § § | 2:15-cv-01431-JRG-RSP **(lead case)** |
| ADS SECURITY, LP | § | 2:15-cv-01463-JRG-RSP |
| ALARM SECURITY GROUP, LLC | § | 2:15-cv-01464-JRG-RSP |
| CENTRAL SECURITY GROUP NATIONWIDE, INC. | § | 2:15-cv-01462-JRG-RSP |
| GUARDIAN ALARM COMPANY | § | 2:15-cv-01496-JRG-RSP |
| GUARDIAN OF GEORGIA, INC. D/B/A ACKERMAN SECURITY SYSTEMS | § § | 2:15-cv-01429-JRG-RSP |
| ICON SECURITY SYSTEMS, INC. | § | 2:15-cv-01468-JRG-RSP |
| MONITRONICS INTERNATIONAL, INC. | § | 2:15-cv-01466-JRG-RSP |
| SLOMIN'S, INC. | § | 2:15-cv-01469-JRG-RSP |
| *Defendants*. | | |

## ADS SECURITY, L.P.'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS AND CROSS MOTION FOR ATTORNEYS' FEES

4827-6642-7181.1

**Table of Contents**

I.   **Introduction** ................................................................................................................. 1

II.  **Background** .................................................................................................................. 2

   A.   The '090 Patent ..................................................................................................... 2

   B.   Alleged Infringement ............................................................................................ 4

III. **Law and Argument** ...................................................................................................... 7

   A.   ADS is the Prevailing Party .................................................................................. 7

   B.   This Case is Exceptional ....................................................................................... 8

      1.   The '090 Patent is Invalid Under Section 101 of the Patent Act ................ 9

      2.   The '090 Patent is Invalid Under Section 102 of the Patent Act .............. 10

      3.   If the '090 Patent is Not Invalid Under Section 102,
           Plaintiff's Claim Construction Position is Unreasonable ......................... 12

      4.   Plaintiff Had No Intention of Testing the Merits of Its Claim ................. 13

IV.  **Conclusion** .................................................................................................................. 14

4827-6642-7181.1

## Table of Authorities

**CASES**

*Alice Corp. Pty. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) .................................................................................................. 1, 10

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998) ............................................................................................ 8

*Dean v. Riser*,
  240 F.3d 505 (5th Cir. 2001) ................................................................................................ 7

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
  No. 2:12-cv-00764, 2015 U.S. Dist. LEXIS 34785 (E.D. Tex. Mar. 20, 2015) ................ 9

*eDekka LLC v. 3balls.com, Inc.*,
  No. 2:15-CV-541, 2015 U.S. Dist. LEXIS 168610 (E.D. Tex. Dec. 17, 2015) ........ 10, 13

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) .......................................................................................... 13

*Highway Equip. Co. v. FECO, Ltd.*,
  469 F.3d 1027 (Fed. Cir. 2006) ............................................................................................ 7

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) .............................................................................................. 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014) ............................................................................................... 1, 8, 14

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) ............................................................................................ 7

*Raylon, LLC v. Complus Data Innovations, Inc.*,
  700 F.3d 1361 (Fed. Cir. 2012) ............................................................................................ 9

*SFA Sys., LLC v. Newegg Inc.*,
  2015 U.S. App. LEXIS 11892 (Fed. Cir. July 10, 2015) ................................................. 13

*Sfa Sys. v. 1-800-Flowers.com, Inc.*,
  No. 6:09-CV-340, 2014 U.S. Dist. LEXIS 184311 (E.D. Tex. July 7, 2014) ................. 14

*Trover Grp., Inc. v. Dedicated Micros USA*,
  No. 2:13-CV-1047-WCB, 2015 U.S. Dist. LEXIS 107733 (E.D. Tex. Aug. 17, 2015) .... 7

**STATUTES**

35 U.S.C. § 101 ................................................................................................................. *passim*

35 U.S.C. § 102 ................................................................................................................. *passim*

35 U.S.C. § 285 ................................................................................................................. *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 .............................................................................................................. *passim*

ADS opposes Plaintiff's motion to dismiss[1] insofar as it requests that each party bear its own costs, attorney's fees, and expenses and also insofar as it requests dismissal of ADS's counterclaims with prejudice. ADS further moves that this case be declared exceptional and for attorneys' fees pursuant to 35 U.S.C. § 285.

## I. Introduction

This litigation is not your run of the mill patent litigation. Plaintiff is asserting a patent[2] directed toward customizing "beverage products, health products[,] and perfumes"[3] against ADS's home automation and security systems. When served with a Rule 11 motion[4] detailing the invalidity of Claim 1 of this patent – the only claim asserted against ADS – Plaintiff filed a "Notice of Withdrawal of Complaint."[5] In doing so, Plaintiff confirmed that a reasonable investigation would have revealed that Claim 1 of '090 Patent is invalid when Plaintiff filed this suit. Plaintiff should not be allowed to simply walk away after ADS has had to incur significant fees in defending itself against an infringement suit that never should have been filed.

Any reasonable inquiry into the viability of Claim 1 would have revealed (1) that not only is Claim 1 invalid under Section 101 of the Patent Act after the Supreme Court's holding in *Alice*,[6] but also, that (2) the claim is invalid for failing to meet the novelty requirements of Section 102 of the Patent Act. Because there is no objectively reasonable basis for believing that

---

[1] (Dkt. # 58).
[2] U.S. Patent No. 8,788,090, entitled "System and method for creating a personalized consumer product."
[3] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Col. 1, ll. 21-22.
[4] *See* Exhibit 1 filed herewith, ADS's safe harbor notice sent on December 28, 2015. Because Rule 11 states that the motion should not be "presented to the Court," if the offending conduct is withdrawn, ADS is not filing the Rule 11 motion as an exhibit, although ADS believes it will provide the Court with context. ADS can file the motion as an exhibit if requested by the Court.
[5] (Dkt. # 55).
[6] *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).

Plaintiff's patent infringement claims are reasonable, this Court should find that this case is exceptional and award attorneys' fees to ADS.[7] This case certainly "stands out from others."[8]

## II. Background

### A. The '090 Patent and the Instant Suit

Only Claim 1 of the '090 Patent is at issue in this litigation.[9] Claim 1 reads as follows:

1. A system for customizing a product according to a user's preferences comprising: a remote server including a database configured to store a product preference of a predetermined product for at least one user; and

> a first communication module within the product and in communication with the remote server;
>
> wherein the remote server is configured to receive the identity of the predetermined product and the identity of the at least one user, retrieve the product preference from the database based on the identity of the predetermined product and the identity of the least one user and transmit the product preference to the first communication module.

Claim 1 of the '090 Patent was granted after a series of continuation applications[10] broadening the claimed invention from the one described in the specification to one that would preempt the use of a communications network to configure any and every product capable of communicating with a network.

A brief review of the '090 Patent's written description confirms that the expansive breadth of Claim 1 is not commensurate with its technical disclosure. The "system" that the '090 Patent describes was not intended to have the staggering scope evident in Claim 1, rather the system was specifically intended to "enable a user to customize products containing solids

---

[7] An itemization of attorneys' fees incurred by ADS, along with a declaration of their reasonableness is filed as Exhibit 3 to this motion in a separate filing under seal.
[8] *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).
[9] *See* Exhibit 1 to Defendant's Motion for Judgment on the Pleadings, Dkt. # 23-2, November 19, 2015 Email from J. Johnson to N. Bailey re: assertion of only Claim 1 against ADS.
[10] The '090 Patent application was a continuation application of U.S. patent application Ser. No. 12/854,451, filed Aug. 11, 2010, which was a continuation application of U.S. patent application Ser. No. 11/471,323, filed Jun. 20, 2006, now U.S. Pat. No. 7,899,713.
4827-6642-7181.1

and fluids by allowing a server on the global computer network, e.g., the Internet, to instruct the hardware mixing the solids and fluids of the user's preferences for the final mix."[11]

The '090 Patent's specific purpose is confirmed by its Abstract,[12] which summarizes the invention as follows:

> A system and method for creating a personalized consumer product are provided. The system and method of the present disclosure enables a user, e.g., a consumer, to customize **products containing solids and/or fluids** by allowing a server communicating over the global computer network, e.g., the Internet, to provide **product preferences of a user to a product or a mixing device, e.g., a product or beverage dispenser**. The method for creating a product according to a user's preferences over a network includes the steps identifying a product to a server over the network; identifying a user to the server over the network; retrieving the user's product preferences from a database at the server based on the product's identity and user's identity; transmitting the user's product preferences to the product over the network; **and mixing at least one element contained within the product based on the user's product preferences.**

Consistent with the Abstract, the "system" claimed in Claim 1 of the '090 Patent (and its components, claimed and unclaimed) is described in more detail as follows:

- For customizing products such as "beverage products, health products and perfumes"[13]
- "A system and method to enable users to control mix parameters of a product from the global computer network"[14]
- "The server **104** will formulate the proper mix of elements, e.g., ingredients, for the product according to the user's product preferences. The server **104** will transmit the proper formulation to the terminal **102** which will communicate the formulation to the product **110.**"[15]
- "The product **100** will consist of a case covering or housing **202**, and inside the case covering, the product **110** includes one or more sealed compartments **204** that are waterproof and gas proof. These compartments **204** will contain the elements, e.g., fluids and/or solids, to be mixed to produce the final product."[16]
- "The communication module **214** will communicate to the controller **212** the specific valve settings for each valve based on the user's product preferences .

---

[11] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Col. 1, ll. 55-62.
[12] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Abstract (emphasis added).
[13] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Col. 1, ll. 21-22.
[14] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Col. 1, ll. 55-56.
[15] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Col. 3, ll. 2-7.
[16] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Col. 4, ll. 16-21.
4827-6642-7181.1

> . . . As instructed by the controller **212**, the microvalves **208** will release fluids and/or solids from the separate compartments **204** into the central waterproof and gas proof chamber (MC) **210** . . . . Upon activation of the actuator **216**, the contents of the sealed chamber **210** will be mixed. The mixing chamber **210** will include an exit port **218** for the fluids/solids to be dispensed to the user. This exit port **218** may be a release valve to dispense the fluids/solids, or another type of exit point, e.g., a threaded cylindrical connection and cap, that will allow the user to dispense the contents of the mixing chamber **210**."[17]

After describing the "system" taught by the '090 Patent, the disclosure then describes a "beverage dispenser" as an embodiment and proceeds to discuss the various characteristics of that dispenser.[18] While – after filing the Complaint and only upon request – Plaintiff has stated that the "beverage dispenser" claims are not being asserted against ADS, those claims[19] further confirm the boundaries of the '090 Patent's disclosure.

B. <u>Alleged Infringement</u>

Despite it being evident that the invention of the '090 Patent, if any, is found in a system for controlling a mixing device, Plaintiff has alleged that ADS infringes the '090 Patent by selling, offering to sell, and/or using:

> [H]ome automation and security systems, including, without limitation, the ADS Home Automation System, ADS Aniware®, and related connectable components, such as alarm systems, lighting controllers, door locks, mobile apps, thermostats, and wireless security cameras . . . . These systems and devices allow a user to remotely customize the operation of components in a house, such as an alarm system or a thermostat, for example.

Further, although it is apparent that an invention groundbreaking enough to encompass any and all product communications with any communications network is nowhere to be found in the written description of the '090 Patent, Plaintiff has filed 59 other suits asserting the '090 Patent against anything and everything connected to the internet. The breadth of technologies that the '090 Patent has been asserted against is staggering:

---

[17] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Col. 4, ll. 40-64.
[18] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, Col. 6, l. 7 – Col. 8, l. 49.
[19] *See* Exhibit A to the Complaint, U.S. Patent No. 8,788,090, claims 13-20.
4827-6642-7181.1

| Civil Action No. | Technology Asserted Against |
|---|---|
| | |
| 2:15-cv-00156 (Complaint against Defendant ADT, LLC) | Product configuration for door locks, video cameras, thermostats, and light control modules. |
| 2:15-cv-00156 (Amended Complaint against Defendant Rain Bird Corporation) | Product configuration for irrigation sprinklers. |
| 2:15-cv-00156 (Amended Complaint against Defendant Toshiba America) | Product configuration for cameras. |
| 2:15-cv-00157 (Complaint against Defendant Belkin International) | Product configuration for a coffeemaker. |
| 2-15-cv-00158 (Complaint against Defendant BrickHouse Electronics, LLC) | Product configuration for a thermostat, smart locks, lighting, and appliance products, video monitoring equipment, and home security systems. |
| 2-15-cv-00159 (Complaint against Defendant Cisco Systems, Inc.) | Product configuration for network security. |
| 2-15-cv-00161 (Complaint against Defendant General Electric Company) | Product configuration for washers, dryers, thermostats, switches, air conditioners, microwave ovens, refrigerators, and dishwashers. |
| 2-15-cv-00162 (Complaint against Defendant Honeywell International, Inc.) | Product configuration for lighting, locks, cameras, shades, and ceiling fans. |
| 2-15-cv-00164 (Complaint against Defendant OnStar, LLC) | Product configuration that allows one to start a car's engine, lock and unlock car doors, sound the car horn, and flash the car's lights. |
| 2-15-cv-00168 (Complaint against Defendant Sharp Electronics Corporation) | Product configuration for sending scanned documents to a mobile device, to preview and save scanned documents on a mobile device, and control those who can utilize the printing services. |
| 2-15-cv-00173 (Complaint against Defendant Vivint, Inc.) | Product configuration for cameras, door locks, thermostats, appliance controls, window sensors, motion detectors, and lighting controls. |
| 2-15-cv-01124 (Complaint against Defendant D-Link Systems, Inc.) | Product configuration for baby monitors, sensors, smart plugs, Wi-Fi hubs, Wi-Fi sirens, and similar systems. |
| 2-15-cv-01164 (Complaint against Defendant Summer Infant, Inc.) | Product configuration for video monitors & internet viewing systems and compatible devices, and similar systems and devices. |
| 2-15-cv-01465 (Complaint against Defendant Protect America, Inc.) | Product configuration for home automation devices, such as door and window sensors, door locks, appliance modules, and wireless security cameras. |
| 2-15-cv-01469 (Complaint against Defendant Slomin's | Product configuration for motion detectors, door contacts, video cameras, and smoke detectors. |

| | |
|---|---|
| Inc.) | |
| 2-15-cv-01496 (Complaint against Defendant Guardian Alarm Company) | Product configuration for security systems, cameras, door locks, lights, thermostats, ceiling fans and window shades. |
| 2-15-cv-01498 (Complaint against Defendant AFA Protective Systems, Inc.) | Product configuration for security systems, cameras, door locks, lights, thermostats, and garage doors. |
| 2-15-cv-01573 (Complaint against Defendant Smartlabs, Inc.) | Product configuration for networking equipment, apps, plug-in devices, lights, remotes, switches and keypads, sensors, outlets, thermostats, cameras, audio equipment, and lighting control systems. |
| 2-15-cv-01576 (Complaint against Defendant Rheem Manufacturing Company) | Product configuration for electric water heaters, gas furnaces, heat pumps, pool heaters, and similar systems and devices. |
| 2-15-cv-01641 (Complaint against Defendant AT&T Corp.) | Product configuration for the operation of a phone or other communication device. |
| 2-15-cv-01881 (Complaint against Subaru) | Product configuration for various car related products and functions, including horns, door locks, heating and ventilation. |
| 2-15-cv-01876 (Complaint against Ford Motor Company) | Product configuration for various car related products and functions, such as charging, remote control functions, heating and ventilation. |
| | |

Plaintiff's serial assertion of the '090 patent against anything capable of communicating with a network has been characterized by the Electronic Frontier Foundation as an attack on the "Internet of Things."[20] While, as noted above, the original patent application that the '090 Patent stems from was directed toward custom configuration of beverage equipment, it is more accurate to now state, as techrights.org has, that the '090 Patent is directed toward a "litigation apparatus."[21]

Despite withdrawing its Complaint in response to service of ADS's Rule 11 motion for sanctions, Plaintiff continued to assert claims of patent infringement against technologies in a

---

[20] *See* Exhibit 2 to Defendant's Motion for Judgment on the Pleadings, Dkt. # 23-3.
[21] *See* http://techrights.org/2015/09/02/rcdi-troll/ (last visited on January 22, 2016).
4827-6642-7181.1

broad range of industries.[22] Indeed, after service of ADS's Rule 11 motion, and even after withdrawal of Plaintiff's Complaint in this case, Plaintiff filed amended complaints continuing to allege infringement of the '090 Patent by various technologies.[23]

### III. Law and Argument

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[24] Here, ADS is the prevailing party. And, this case is certainly exceptional.

#### A. ADS is the Prevailing Party

Plaintiff has unilaterally moved to dismiss their claims with prejudice. In such a case, as stated recently by this Court, "the opposing party is ordinary regarded as the prevailing party."[25] "That is because the order of a court dismissing an action with prejudice (as opposed to a dismissal without prejudice) has res judicata effects that result in a judicially sanctioned change in the legal relationship of the parties."[26] To hold otherwise in a case like this one – where Plaintiff withdrew its Complaint in response to a Rule 11 motion, and then moved to dismiss it – "would encourage the litigation of unreasonable or groundless claims."[27]

---

[22] *See* Exhibit 2 filed herewith showing cases where Plaintiff is still pursuing patent infringement claims based on the '090 Patent.

[23] *See* Dkt. # 8 in Civil Action No. 2:15-cv-01573 (amended complaint filed on January 12, 2016 alleging infringement by home automation and security systems); Dkt. # 4 in Civil Action No. 2:15-cv-1875 (amended complaint filed on January 20, 2016 alleging infringement by remote operation of components in a car); Dkt. #8 in Civil Action No. 2:15-cv-01880 (amended complaint filed on January 20, 2016 alleging infringement by remote operations of components in a car).

[24] 35 U.S.C. § 285.

[25] *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 U.S. Dist. LEXIS 107733, at *5-6 (E.D. Tex. Aug. 17, 2015) (citing *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416-17 (Fed. Cir. 2004)).

[26] *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 U.S. Dist. LEXIS 107733, at *5-6 (E.D. Tex. Aug. 17, 2015) (citations omitted).

[27] *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006); *see also Dean v. Riser*, 240 F.3d 505, 510 (5th Cir. 2001) ("With respect to the more calculating plaintiff, who voluntarily withdraws his complaint 'to escape a disfavorable judicial determination on the merits,' the balance tips in favor of the counter policy to discourage the litigation of frivolous, unreasonable, or groundless claims.").

### B. This Case is Exceptional

The Supreme Court recently clarified the scope of Section 285, holding that an exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[28] "After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate," which is within the Court's discretion.[29]

The very fact that this action was filed renders the manner in which it was litigated unreasonable. Further, after Plaintiff was presented with very detailed reasons why Claim 1 of the '090 Patent is invalid, Plaintiff continued to assert its claims. It was not until ADS served a Rule 11 motion that Plaintiff withdrew its Complaint.[30] Yet, even after that withdrawal – in response to a Rule 11 motion <u>that only focused on invalidity</u> – Plaintiff continues to assert the '090 Patent against numerous other defendants.

ADS does not believe, and this Court most certainly would not adopt, the notion that withdrawal of a Complaint within the safe harbor period of Rule 11 necessitates a finding that a case is exceptional. There are many cases where withdrawal may be appropriate to comply with Rule 11 but are otherwise not exceptional.[31] This case is not one of them.

---

[28] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).
[29] *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (citations omitted).
[30] While Plaintiff's conduct was independently sanctionable under Rule 11, Plaintiff's withdrawal of the Complaint removed its conduct from the purview of Rule 11. ADS is not requesting Rule 11 sanctions.
[31] *See cf. MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012) (noting that "[d]efeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the suit was objectively baseless") (citations omitted).

As explained in more detail below, this case is objectively baseless.[32] No reasonable litigant could reasonably expect success on the merits.[33] Plaintiff did not make losing, but reasonable arguments. Plaintiff made arguments that objectively – based on the law – had no merit.

### 1. The '090 Patent is Invalid Under Section 101 of the Patent Act

As fully briefed in Defendant's Motion for Judgment on the Pleadings and its Reply in support of the same, a cursory review of the law on Section 101 would have revealed that Claim 1 of the '090 Patent is directed to an abstract idea and that its elements do not save it from patent ineligibility.[34] While Plaintiff argued that claim construction was necessary before ruling on ADS's Motion for Judgment on the Pleadings, Plaintiff did not offer any claim construction that would save Claim 1 of the '090 Patent from invalidity under Section 101. Indeed, Plaintiff failed to even offer a claim construction.

ADS will not repeat the arguments already made in its Motion for Judgment on the Pleadings and its Reply, but for purposes of this motion it is important to note that Plaintiff's unreasonable argument that Claim 1 of the '090 Patent requires a "specific computer" continued in its sur-reply. For example, Plaintiff argued that:

> First, claim 1 recites a remote server and a communication module within a product. This alone indicates something more than a generic computer. Second, the claim also **specifies specific** information and how that information is stored, accessed, and transmitted to accomplish a **specific** task. None of these additional limitations are within the realm of the functions of a generic computer.[35]

---

[32] *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB, 2015 U.S. Dist. LEXIS 34785, at *8 (E.D. Tex. Mar. 20, 2015) (noting that defendant "must show that [Plaintiff's] positions (individually or taken as a whole) were frivolous or objectively baseless.").
[33] *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1370 (Fed. Cir. 2012) ("Similar to the evaluation under Rule 11, for litigation to be objectively baseless, the allegations "must be such that no reasonable litigant could reasonably expect success on the merits.") (citations omitted).
[34] *See* Defendant's Motion for Judgment on the Pleadings, Dkt. # 23 (opening brief) and Dkt. # 45 (reply brief).
[35] (Dkt. # 54, p. 3) (emphasis added).
4827-6642-7181.1

Plaintiff's wholly conclusory expert declaration provides no insight into these "specifics," and is nothing more than a rubber stamp of its arguments that was solely intended to manufacture a "factual dispute." As ADS noted in its Reply brief, it is difficult to conceive of computer activity more conventional than receiving, storing, and transmitting data. Plaintiff's attempts to imbue Claim 1 with the "something more" required by *Alice* – while perhaps an adventure in a patent draftsman's world – blatantly ignores the dozens of cases at the Federal Circuit that have rejected the same arguments. As was the case in the recent *eDekka* case before this Court, Plaintiff's unreasonable Section 101 positions support an "exceptional" case finding.[36]

### 2. The '090 Patent is Invalid Under Section 102 of the Patent Act

Claim 1 of the '090 Patent is also precluded from patentability by Section 102 of the Patent Act. Because this Court is quite familiar with the requirements of Section 102, Defendant will dispense with a lengthy explanation of Section 102's requirements. Suffice it to say that each and every limitation of Claim 1 of the '090 Patent is described in at least fourteen different single prior art references that qualify as Section 102 prior art. Three of these references were sent to Plaintiff on December 2, 2015,[37] and Plaintiff refused to withdraw its claims of infringement. Six more were served on Plaintiff along with ADS's Rule 11 motion. And, five more were served with ADS's invalidity contentions.[38] While creative claim constructions may save Claim 1 of the '090 Patent from invalidity under Section 102 with respect to a few of these fourteen references, no reasonable claim construction will save Claim 1 of the '090 Patent from

---

[36] *See eDekka LLC v. 3balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 U.S. Dist. LEXIS 168610, at *17 (E.D. Tex. Dec. 17, 2015).
[37] Three references cited in Plaintiff's Rule 11 motion were disclosed to Plaintiff on December 2, 2105, with claim charts, before ADS served its Rule 11 motion. As part of that communication, ADS requested that Plaintiff withdraw its claims. Plaintiff refused.
[38] *See* Exhibit 4, ADS's Patent Rule 3-3 and 3-4 disclosures; *see also* Exhibits 5 and 6 for copies of the references.
4827-6642-7181.1

being found obvious under Section 103 in light of the ubiquitous teachings of remote product configuration at the time of the filing of the application leading to the '090 Patent.

One Example is U.S. Patent Application Publication No. 2002/0111698,[39] which discloses all elements of Claim 1 in its Abstract:

> A web-based system that includes one or more remote devices, a web-based host, a network, and one or more homes is provided. A user can connect to the web-based host using a remote device via a network such as the Internet. The web-based host provides the user with an interface for monitoring and/or controlling home devices in the user's home. Via the interface, the user can select one or more home devices in the user's home to monitor and/or control. The web-based host receives the user's selections and communicates the user's selections to the user's home via the network. The user's home then receives the user's selections and causes monitoring information to be obtained from selected home devices and/or causes the behavior of selected home devices to be controlled according to the user's selections.

The prior art is rife with disclosures of systems that Plaintiff is accusing of infringement, including remotely configurable thermostats, coffeemakers, cameras, lighting apparatuses, alarm systems, and a host of other devices.[40] Further, the prior art discloses systems capable of preparing a "product" similar to the ones disclosed in the '090 Patent's Specification. U.S. Patent Application Publication No. 2005/0160005 discloses "methods and systems for providing foods, beverages, and associated goods and services in a retail environment."[41] U.S. Patent No. 7,762,181 discloses a "customized nutritional food and beverage dispensing system."[42] And – more importantly – it should be noted that Plaintiff knew that the patent was invalid when it was presented with Section 102 prior art and dismissed claims against other defendants.

---

[39] *See* Exhibit 6 to Plaintiff's Invalidity Contentions, filed herewith as Exhibit 4, for a detailed claim chart.
[40] *See* Exhibits 1 to 14 to ADS Security's P.R. 3-3 Invalidity Contentions as part of Exhibit 4 filed herewith for claim charts. The prior art references are attached as Exhibits 5 and 6 to this motion.
[41] *See* Exhibit 10 to ADS Security's P.R. 3-3 Invalidity Contentions as part of Exhibit 4 filed herewith. This reference is provided as part of Exhibit 6.
[42] *See* Exhibit 11 to ADS Security's P.R. 3-3 Invalidity Contentions as part of Exhibit 4 filed herewith. This reference is provided as part of Exhibit 6.

Undersigned's declaration supports this fact.[43] This pattern of behavior has continued. As noted above, after withdrawing its Complaint against ADS, Plaintiff has continued to assert the '090 Patent against multiple other defendants.

> 3. *If the '090 Patent is Not Invalid Under Section 102, Plaintiff's Claim Construction Position is Unreasonable*

Even if Plaintiff were to somehow distinguish its invention from the nine Section 102 references cited in ADS's Rule 11 motion or the fourteen prior art references cited in its invalidity contentions, Plaintiff cannot escape the objectively unreasonable nature of this litigation. If somehow Plaintiff was to propose a claim construction that resulted in Claim 1 surviving Section 101 or 102 scrutiny, there is no possibility that Claim 1 would read on ADS's home automation systems, much less the breadth of technologies it has been asserted against in the other fifty-eight (58) cases Plaintiff has filed. That is to say, Plaintiff could not have reasonably believed that Claim 1 of the '090 Patent was broad enough to cover the technologies it has been asserted against and also narrow enough to overcome the prior art. The Court does not need to wait until claim construction briefs have been filed to find that – if there is any way to construe Claim 1 of the '090 Patent such that it survives – such a construction would not read on the entire Internet of Things. Further, Plaintiff does not have to take specific claim construction positions for the Court to find that Plaintiff's claim construction positions were unreasonable.

The '090 Patent is directed to a customized solution for mixing "solids and fluids" and has nothing to do with product configuration of everything from baby monitors to pool heaters to irrigation sprinklers that Plaintiff has asserted it against. Aside from Claim 1 of the '090 Patent, which is so broad to cover any and all devices connected to any communications network, the

---

[43] *See* Exhibit 7 filed herewith, Declaration of Nathan J. Bailey
4827-6642-7181.1

claims of the '090 Patent undoubtedly all relate only to configuration of liquid formulations or dispensed products. Defendant ADS, as with most of the entities Plaintiff has sued, does not make, sell, or offer to sell systems that configure liquid formulations or other dispensed products.[44]

### 4. Plaintiff Had No Intention of Testing the Merits of Its Claim

Similar to the *eDekka* case, Plaintiff's "litigation history in this District—which includes filing strikingly similar lawsuits against over [fifty five (55)] defendants—reflects an aggressive strategy that avoids testing its case on the merits and instead aims for early settlements falling at or below the cost of defense."[45, 46] In this regard, ADS asks the Court to review *in camera* the settlement agreements entered into in this case, which ADS has reviewed, and for a hearing on the settlement communications with the remaining defendants in cases involving the '090 Patent after Plaintiff withdrew its Complaint in this case. Alternatively, ADS asks that this Court order Plaintiff to file an affidavit describing settlement offers made in cases involving the '090 Patent after withdrawing its Complaint.

Plaintiff's strategy in this case is one of minimal effort with the goal of "exploiting the high cost to defend complex litigation to extract [] nuisance value settlement[s]."[47] Plaintiff did not have an objectively reasonable belief that it was reasonable to file this lawsuit. When it was

---

[44] While Plaintiff has now limited its assertions against Defendant ADS to only Claim 1, all 59 of the lawsuits filed in this District assert "at least Claim 1," leaving all defendants with no choice but to either waste time and expense requesting that Plaintiff limit the asserted claims to only Claim 1 or to waste time and expense assessing the other claims.
[45] See eDekka LLC v. 3balls.com, Inc., No. 2:15-CV-541 JRG, 2015 U.S. Dist. LEXIS 168610, at *17 (E.D. Tex. Dec. 17, 2015).
[46] See SFA Sys., LLC v. Newegg Inc., 2015 U.S. App. LEXIS 11892, 2015 WL 4154110 (Fed. Cir. July 10, 2015) ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285.").
[47] See Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1327 (Fed. Cir. 2011).
4827-6642-7181.1

presented with evidence that Claim 1 of the '090 Patent was invalid, Plaintiff continued to file lawsuits asserting infringement.

Plaintiff should not be able to assert infringement of a weak and invalid patent and exit at a stage before the Court has entered a decision on invalidity. Allowing Plaintiff to exit without payment of ADS's attorneys' fees based on a finding that the Court has not yet decided Plaintiff's Section 101 motion or yet reviewed the numerous Section 102 references that invalidate Claim 1 of the '090 Patent would be severely prejudicial to ADS. Doing so would create "judicially sanctioned" exit points – and ignore the requirement that a lawsuit must be objectively reasonable when filed. This case does not require a "mini-trial" on the merits. Evidence of the frivolity of Plaintiff's infringement claims is reasonably clear after a brief review of Claim 1, the specification of the '090 Patent, and the prior art.[48] This Court should use the tools it has at its disposal to prevent abuse of the legal system.

## IV. Conclusion

This case stands out from the run of the mill patent litigation. Plaintiff has asserted a beverage dispenser patent against any and all configurable devices that communicate with a network. A cursory review of the law and facts relevant to this case would have led to the conclusion that a reading of the '090 Patent that would encompass ADS's home automation systems would give Plaintiff a monopoly on an abstract idea, and a reading of the '090 Patent that would survive the prior art – if any exists – would leave Plaintiff with a patent so narrow that ADS would not infringe. If a middle ground exists, it is in a wonderland not envisioned by

---

[48] *See Sfa Sys. v. 1-800-Flowers.com, Inc.*, No. 6:09-CV-340, 2014 U.S. Dist. LEXIS 184311, at *8-9 (E.D. Tex. July 7, 2014).

the law.  Because ADS has shown by a preponderance of the evidence[49] that this case is exceptional, ADS should be awarded its attorneys' fees.

                              Respectfully submitted,

                              _/s/Nathan J. Bailey_____
                              Nathan J. Bailey, Lead Counsel,
                              TN BPR # 026183
                              WALLER LANSDEN DORTCH & DAVIS, LLP.
                              Nashville City Center
                              511 Union Street, Suite 2700
                              Nashville, TN  37219
                              Telephone: (615) 244-6380
                              Facsimile: (615) 244-6804
                              Nate.Bailey@wallerlaw.com

                              *Attorneys for ADS Security, L.P.*

---

[49] *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014) (holding that a party's entitlement to attorney fees need only be proved by a preponderance of the evidence).

4827-6642-7181.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 22, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF filing system per Local Rule CV-5(a)(3).

      /s/Nathan J. Bailey
    Nathan J. Bailey

## CERTIFICATE OF CONFERENCE

Counsel has complied with the meet and confer requirement in LOCAL RULE CV-7(h). This motion is opposed. A telephonic conference regarding this motion was conducted with Plaintiff's lead counsel, followed by further discussion via email. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

      /s/Nathan J. Bailey
    Nathan J. Bailey