IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC | § § § | |
| Plaintiff, | § | Case No: 2:15-cv-1431-JRG-RSP |
| vs. | § § § | LEAD CASE |
| GUARDIAN PROTECTIONS SERVICES, INC., | § § § | |
| Defendant. | § § | |
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC | § § § | |
| Plaintiff, | § | Case No: 2:15-cv-1463-JRG-RSP |
| vs. | § § § | LEAD CASE |
| ADS SECURITY, LP | § § | |
| Defendant. | § § § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT ADS SECURITY, L.P.'S
CROSS MOTION FOR ATTORNEYS' FEES**

Plaintiff opposes ADS Security, L.P.'s Cross Motion for Attorneys' Fees ("Cross Motion"). Plaintiff respectfully requests the Court to find that this case is not exceptional and deny ADS's Cross Motion. Plaintiff further requests that the Court grant Plaintiff's earlier filed motion to dismiss this case, and all claims by and between the parties, with prejudice, with each party to bear its own fees and costs.

## I. Introduction

Defendant's bid for attorney fees should be denied. Plaintiff brought this lawsuit in good faith and has committed no acts that could be considered as making this an "exceptional case." Leigh Rothschild, who founded Plaintiff RCDI, is a prolific inventor having been named an inventor on approximately 87 issued patents and more than 125 pending patent applications. While RCDI can be called a non-practicing entity ("NPE"_), it is not a typical NPE. Mr. Rothschild, as the inventor and founder, has invested considerable personal resources in the patent system and in developing his patent portfolio. Ex. B., ¶ 5. He has also spent considerable personal resources in asserting and licensing his patents. *Id*. He has also invested substantial time and money in further developing his inventions and protecting those additional developments with continuing patent applications. *Id*.

Defendant's arguments for attorney fees are that (1) Plaintiff is asserting an unreasonable claim construction' (2) claim 1 of the patent-in-suit is invalid; (3) Plaintiff seeks to dismiss after being threatened with a Rule 11 motion; and (4) Plaintiff has enforced the patent-in-suit against a large number of defendants.

With respect to claim construction and validity, these are issues that are almost always in dispute in any patent infringement lawsuit. The courts have vehicles for deciding these issues including claim construction hearings and motions for summary judgement. This lawsuit has not reached the claim construction hearing and Defendant has not filed a motion for summary judgment.

Regarding claim construction in particular, Defendant's argument centers on the meaning of "product." Defendant believes that because embodiments in the '090 Patent specification deal with liquids and consumable products, that those limitations should be read into claim 1. There

is nothing, however, that is unreasonable about Plaintiff's position that "product" should be given its plain and ordinary meaning, which would encompass non-consumable products as well as consumable products. No express definition of "product" is in the intrinsic record. The patentee never expressly disclaimed non-consumable products. And the additional elements of certain dependent claims, coupled with the doctrine of claim differentiation, should indicate that the term "product" in claim 1 of the '090 Patent is not limited to liquids and consumable products.

Regarding validity, Defendant cites to various pieces of prior art and argues that the '090 Patent is invalid. Yet, nobody acting on Plaintiff's behalf has made a determination that would lead Plaintiff to believe that the asserted prior art renders the patent invalid. And, no court or other authority has made that determination.

Regarding Defendant's threat of a Rule 11 motion, the threat was explicitly tied to a demand that Plaintiff pay Defendant's attorneys' fees. It appears to Plaintiff that the threat was simply a vehicle aimed at extracting payment from Plaintiff. Plaintiff believes that the proposed Rule 11 motion would not have been granted. Nevertheless, Defendant's behavior appeared overly aggressive and reckless, and Plaintiff chose to dismiss the lawsuit rather than deal with a reckless defendant.

In short, there is nothing out of the ordinary about this case, particular compared to other cases brought by non-practicing entities. None of the factors supporting a fee award exist in this lawsuit, and the case should not be considered "exceptional."

## II.     Procedural History

Plaintiff filed its Complaint against ADS Security, L.P. ("Defendant" or "ADS") on August 26, 2015 (Dkt. 1). On October 28, 2015, this case was consolidated with others in the

lead case (Dkt. 6).  On or about November 5, 2015, Defendant's counsel contact Plaintiff's counsel to request a 15-day extension to respond to the Complaint.  Ex. A, ¶ 9.  Defendant's counsel also indicated that Defendant was putting together a counteroffer and needed additional time because the infringement allegations and accused products involved indemnitors and suppliers and they were trying to sort out those issues.  *Id*.  On November 19, 2015, Defendant filed its Answer and Counterclaims (Dkt. 16).

On November 19, 2015, Defendant's counsel contacted Plaintiff's counsel threatening to file a Rule 11 motion and a Motion for Judgment on the Pleadings ("Alice Motion") if Plaintiff did not dismiss the lawsuit and pay Defendant's then-alleged attorney fees of $43,330.  Ex. A, ¶ 10.  Plaintiff's counsel responded that Plaintiff would not accept a counteroffer that involved Plaintiff paying Defendant's attorney fees.  *Id*.   On November 24, 2016, Defendant filed its Alice Motion (Dkt. 23).  On December 28, 2015, Defendant's counsel served Plaintiff's Counsel with a Safe Harbor Notice of a Rule 11 motion.  Ex. A, ¶ 11.   On January 21, 2016, Plaintiff moved to dismiss its lawsuit against ADS (Dkt. 58).

### III.     Legal Standard

Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  The Supreme Court clarified the scope of section 285, holding that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*.

While no single element is dispositive, "predominant factors to be considered, though not exclusive, are those identified in *Brooks Furniture [Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005)]: bad faith litigation, objectively unreasonable positions, inequitable conduct before the [Patent and Trademark Office ("PTO")], litigation misconduct, and (in the case of an accused infringer) willful infringement." *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, J.); see also *Octane*, 134 S. Ct. at 1756 n.6 ("[I]n determining whether to award fees under a similar provision in the Copyright Act, district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"), quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).

Fee-shifting in patent cases originated in connection with a provision of the 1946 Patent Act, which stated that a district court "may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment in any patent case." *Octane*, 134 S. Ct. at 1753 (quoting 35 U.S.C. § 70 (1946)). Even with this authority, courts exercised their discretion sparingly, "view[ing] the award of fees not 'as a penalty for failure to win a patent infringement suit,' but as appropriate 'only in extraordinary circumstances.'" *Id*. at 1753 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). Fee awards were made "to address 'unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force,' which made a case so unusual as to warrant fee-shifting." Id. (quoting *Park-In-Theatres*, 190 F.2d at 142).

*Octane* explained that "the addition of the phrase 'exceptional cases in § 285,' was 'for purposes of clarification only.'" *Octane*, 134 S. Ct. at 1753. Octane concluded that until Brooks

Furniture, courts correctly applied § 285 only in rare cases and "in a discretionary manner, assessing various factors to determine whether a given case was sufficiently 'exceptional' warrant a fee award" and considering "the totality of the circumstances." *Id*. at 1753-54.

This district has discerned several guidelines from *Octane* that guide the court in determining whether to award fees. See, Ex. C, Order and Opinion Denying Attorney's Fees, *Stargent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 675304 (E.D. Tex. Aug. 6, 2014) (Dyk, J.). "First, awards of attorneys' fees in patent cases should be reserved for rare and unusual circumstances. . . ." *Id*. at *5 (citing Octane, 134 S. Ct. at 1756) ("In 1952, when Congress used the word in § 285. . . '[e]xceptional' meant uncommon, rare, or not ordinary." (internal quotation marks omitted)). The district court noted *Octane's* reliance on *Park-In-Theatres*:

> [T]he payment of attorney's fees for the victor is not to be regarded as a penalty for failure to win a patent infringement suit. The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear.

*Id.* at *5-6; (quoting *Park-In-Theatres*, 190 F.2d at 142).

Second, determining whether attorney fees should be awarded involves considering the totality of the circumstances. *Stragent*, WL 675304 *6. The predominant factors that should be considered are those set out in Brooks Furniture, including bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, litigation misconduct, and (in the case of an accused infringer) willful infringement. *Id*. (citing *Octane*, 134 S. Ct. at 1756). "'A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set

itself apart from mine-run cases to warrant a fee award.'"  *Id*. (quoting Octane, 134 S. Ct. at 1757).  The court cautioned, however, that

> [t]he totality of the circumstances standard is not, however, an invitation to a "kitchen sink" approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees.  In adopting the totality of the circumstances approach, the Supreme Court did not intend to burden the district court with reviewing in detail each position and each action taken in the course of litigation by the losing party.

*Id*.

Third, the mere fact that a party advances a losing argument is not relevant to a consideration of whether a case is "exceptional."  *Stragent*, WL 675304 *6.  The focus is on arguments that were frivolous or made in bad faith.  *Id*. *6-7 (citing *Octane*, 134 S. Ct. at 1753 and *Octane's* reliance on *Park-In-Theatres*).  "To impose fees on a party simply for making losing arguments would be the same in effect as fully adopting the English Rule, whereby the losing party always pays the winner's fees."  Id. *7.

Fourth, the losing party's conduct need not be independently sanctionable to justify an award of fees.  *Id*. (citing Octane, 134 S. Ct. at 1756).

Fifth, the statute is directed to exceptional "cases."  *Id*.  "The determination of whether attorney's fees are warranted under § 285 should be a determination of whether in light of the totality of the circumstances the case *as a whole* is exceptional.  *Id*. (Emphasis in orginal).

Sixth, the relevant considerations for an exceptional case determination may include the conduct of the prevailing party.  *Id*. *8.  For example, if the prevailing party advanced arguments in bad faith or committed litigation misconduct, this may weigh against a finding of a fee award. *Id*.  Relying on *Octane*, *Fogerty*, and *Park-In-Theatres*, the court noted that "[t]he equitable force of bad conduct of the losing party may be diminished depending on the conduct of the winning party."  *Id*.

### IV.     There is Nothing Exceptional About This Case

Defendant's Cross Motion is similar to that in the *Stragent* case. It is a "kitchen sink" approach to a demand for attorneys' fees. There is nothing about this case, however, that can be considered "exceptional." Defendant's demand is based on a claim construction argument, an invalidity argument, Plaintiff's motion to dismiss after being wrongly served with a Rule 11 notice, and an erroneous comparison to *eDekka*. Noticeably absent, however, are any of the factors that this district has previously relied upon including bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, subjective bad faith, or exceptionally meritless claims.

RCDI brought its claims against ADS in good faith. Ex. A, ¶¶ 4, 5, and 7; Ex. B. ¶¶ 6-8. RCDI's counsel reviewed publically-available information regarding ADS's products and made a determination that there was a good faith argument that the accused products infringed at least claim 1 of the patent-in-suit. Ex. A, ¶ 5; Ex. B, ¶ 8. Plaintiff believes, in good faith, that the patent-in-suit is valid and is being infringed by ADS. Ex. A, ¶¶ 4, 5, and 7; Ex. B. ¶¶ 6-8. Plaintiff filed its Complaint in good faith. *Id*. Plaintiff considered ADS's Rule 11 motion and determined that it should not be granted. Ex. A, ¶ 11; Ex. B. ¶ 10. Due to the fact that ADS and its counsel appeared to be engaging in questionable litigation tactics, Plaintiff nevertheless decided to withdraw its Complaint. *Id*. Simply because Plaintiff is withdrawing its Complaint, given Defendant's aggressive and questionable behavior, does not indicate that Plaintiff took an objectively unreasonable position in filing its Complaint in the first instance.

Defendant cites the *eDekka* case and attempts to draw parallels between that case and the present lawsuit. This lawsuit, however, is distinguishable from the *eDekka* case. First, eDekka filed over 200 lawsuits. In this case, Plaintiff has filed 57 lawsuits, 38 of which have been

resolved. Plaintiff also notes that at least 15 of those cases were filed after the consolidated case that includes the ADS litigation. ADS is the last remaining active defendant in this particular consolidated case.

Further, there has been nothing about Plaintiff's conduct that is on par with the aggressiveness in the *eDekka* case. In the *eDekka* ruling on attorneys' fees, the court focused on eDekka's conduct at, and shortly prior to, a hearing on § 101. In this lawsuit, however, there has been no § 101 hearing as of yet. And, Plaintiff has not extended any extraordinarily low offers to numerous defendants just days prior to a § 101 hearing. It is absolutely true that Plaintiff has extended early settlement proposals to most defendants and has negotiated early settlements with many of those defendants. This is common in multi-defendant cases, however, and does not make this case exceptional.

With respect to the § 101 issue, Plaintiff notes that ADS is the only Defendant to have filed a § 101 motion and that, unlike the *eDekka* case, no other defendants have joined in the motion. Also, when the *eDekka* court considered the defendant's § argument, it noted that the patent-in-suit did not require a computer and only vaguely alluded to computer-based activity. In the present case, the '090 Patent clearly recites several hardware components. The § 101 issue has been fully briefed and does not need to be repeated here. However, it is clear that Plaintiff's § 101 position in this lawsuit is far different from the plaintiff's position in the *eDekka* case.

**V.      Defendant's Claim Construction Argument is Not Indicative of an Exceptional Case**

ADS has not advanced an argument as to why its products do not infringe under a plain and ordinary interpretation of claim 1 of the patent-in-suit. Rather, ADS's response is that there is no infringement because claim 1 can only relate to configurations of liquid formulas or

dispensed products.  Cross Motion, at 12-13.[1]  To be sure, the specification of the '090 Patent discloses several examples of customized products that are liquids and/or other consumables. The specification does not, however, expressly define "product" as a consumable, or a liquid or dispensable item.  Rather, the specification states that "[i]t is to be understood that the present disclosure may be implemented in various forms of hardware, software, firmware, special purpose processors, or a combination thereof."  '090 Patent, col. 3, ll. 12-14.  Given the lack of any express definition of "product" in the intrinsic record, the term "product" must be given its plain and ordinary meaning, which could include non-consumable products as well as consumable products.  See, e.g., *The Walt Disney Company*, 346 F.3d 1082, 1092, 68 USPQ2d 1516, 1524 (Fed. Cir. 2003) (Since there was no express definition given for the term "URL" in the specification, the term should be given its broadest reasonable interpretation consistent with the intrinsic record and take on the ordinary and customary meaning attributed to it by those of ordinary skill in the art…).

     Moreover, claims depending from claim 1, such as claims 2 and 3 for example, include limitations that *do* specify additional requirements of the "product."  Claim 2 recites that the "product preference is a formulation including a predetermined amount of at least one element." And, claim 3 further recites that "the at least one element is a fluid, a solid, or any combination thereof."  Arguably, these additional limitations could support an argument that the "product" recited in these dependent claims is a formulation or something to be mixed, as Defendant contends.  However, those elements are in dependent claims and not base claim 1.  The doctrine of claim differentiation indicates that the term "product," as used in claim 1 of the '090 Patent, is not limited to a liquid or dispensed, consumable product.

---

[1] Even Defendant, however, acknowledges that the '090 Patent was the result of a series of continuing applications and that the result was that the USPTO issued the '090 Patent with broadened claims.

Moreover, with respect to the definition of "product" in claim 1 of the '090 Patent, there are "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." See, e.g, *Teleflex, Inc. v. Ficosa North America Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002) ("Absent an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning."). The ordinary meaning of "product" is not limited to only the types of products Defendant contends.

Defendant's argument for limiting the meaning of the word "product" is an impermissible attempt to read limitations from the specification (and from dependent claims) into claim 1. "Though understanding the claim language may be aided by explanations contained in the written description, it is important not to import into a claim limitations that are not part of the claim. For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004); see also *Liebel-Flarsheim Co. v. Medrad Inc.*, 358 F.3d 898, 906, 69 USPQ2d 1801, 1807 (Fed. Cir. 2004) (discussing recent cases wherein the court expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment).

At a minimum, whether the term "product" should be given its plain and ordinary meaning is debatable. There is nothing objectively unreasonable about Plaintiff taking a position that "product," as used in the patent-in-suit, encompasses non-consumable products such as those sold by ADS.

### VI. ADS's Invalidity Arguments Do Not Make This Case Exceptional

Part of ADS's "kitchen sink" approach is to also attack the validity of the '090 Patent. In this context, ADS is basically side-stepping the presumption that a patent is valid and is asking the Court to ignore that presumption, as well as ADS' burden to prove that the patent is invalid. ADS advances several pieces of prior art, unilaterally concludes that those references invalidate the '090 Patent, and then suggest that this makes the filing of Plaintiff's Complaint objectively unreasonable. First, as of yet, Plaintiff has not conducted any in-depth analysis of any of the prior art asserted in Defendant's Cross Motion. Ex. A, ¶ 6; Ex. B, ¶ 9. Defendants almost always assert prior art and the defense of invalidity.

Second, there have been no determinations by a court or other authority that the '090 Patent is invalid over the references Defendant cites. This lawsuit has not even reached the Markman hearing. And, Defendant has not filed a motion for summary judgment on invalidity based on the references they cite. Issues such as claim construction and validity are almost always in dispute in every patent infringement lawsuit. The courts have a process for deciding those issues. This lawsuit has not yet reached the points in the process where those issues are decided. At this time, Plaintiff has what it, in good faith, presumes to be a valid patent. Simply because the validity of the patent-in-suit is disputed does not render this case exceptional. See, e.g., Ex. C., *Stragent*, WL 675304 *10 (even losing arguments on validity are not relevant to a fee award).

### VII. Defendant's Cross Motion Seeks a Mini Trial on the Merits

Defendant states that "[t]his case does not require a 'mini-trial' on the merits." Cross Motion, at 18. Yet, that is exactly what Defendant is asking for in its bid for attorney fees. Almost the entirety of Defendant's argument in its Cross Motion is devoted to its claim

construction and invalidity positions. Defendant also makes reference to its Rule 11 safe harbor notice, but admits that it too "focused on validity."

Defendant would have this Court conduct a Markman hearing and a § 101 hearing, as well as decide a motion for summary judgment on invalidity, all in the context of a motion for attorneys' fees. The Markman hearing has not yet been reached in this lawsuit. There has been no hearing scheduled on the § 101 issue. And, a motion for summary judgment on invalidity has not been filed. Defendant's Cross Motion is the very "kitchen sink" approach that the *Octane* Court and this District have cautioned against. *Stragent*, WL 675304 *6.

**VIII.   ADS's Argument for Attorneys' Fees Creates an Unworkable Presumption**

ADS's basic argument is that in a patent infringement lawsuit, if a defendant presents a plaintiff with prior art and alleges invalidity, and threatens the plaintiff with a Rule 11 motion, and if the plaintiff moves to dismiss the case in response, then the defendant is entitled to attorneys' fees. This would create a presumption of invalidity in any case where a defendant raises prior art and a presumption of a fee award anytime a defendant dismissed a case in response to a Rule 11 threat. To award attorneys' fees under these circumstances would unduly chill a patentee's right to assert its patent in good faith, and would undermine the presumption that issued patents are valid.

**IX.   Defendant's Rule 11 Notice Raises Issues of Questionable Conduct by Defendant**

Before serving its Rule 11 safe harbor notice, Defendant's threatened Plaintiff's counsel with the filing of a Rule 11 motion and a § 101 motion and tied that threat to a demand that Plaintiff pay Defendant's attorneys' fees. Ex. A, ¶ 10. Plaintiff submits that this conduct in itself is questionable and smacks of an improper use of litigation threats to extract attorneys' fees. Ex. B, ¶ 10; see, e.g., Wiley v. RockTenn CP, LLC, No. 4:12-cv-00226 (E.D. Ark.), Order at 8, Sept.

30, 2014, ECF No. 102, at 14 (court denied defendant's motion for fees, in part because defendant had ''threatened to seek attorney fees from the beginning of [the] litigation'' and used ''the threat of fees to persuade Mr. Wiley to abandon all of his claims . . . .'').

Almost as troubling are the "facts" that Defendant's counsel attested to in his declaration in support of his proposed Rule 11 motion. Defendant's counsel stated, *as a fact*, that "Plaintiff's counsel has been put on notice of multiple prior art references *that would invalidate the patent-in-suit under Section 102 for lack of novelty*." Ex. A, ¶ 11 (Emphasis added). Counsel also stated, *as a fact*, "Plaintiff has engaged in a pattern of making *nuisance* settlement offers *in an attempt to extort settlement payments which exploit the high cost of defending patent infringement litigations*." *Id*. (Emphasis added).

These statements are without basis and are untrue. *Id*. With respect to prior art references, while it might be counsel's opinion that invalidating art exists, there is no way that counsel could legitimately attest to the statement, *as a fact*, that certain prior art "would invalidate the patent-in-suit." Outside of the courts or the USPTO, that determination is merely opinion. With respect to settlement offers, Plaintiff has made offers of settlement, but Plaintiff has not tried to "extort" settlement payments. Ex. A, ¶ 12; Ex. B, ¶ 10. While Plaintiff recognizes that some defendants will decide to settle based on an economic analysis, Plaintiff does not tie proposed settlement offers to the cost of litigation. *Id*. Plaintiff has never tried to strong-arm a defendant. *Id*. Rather, Plaintiff has simply offered an early settlement solution to accommodate those defendants seeking early resolution. *Id*. Some defendants have accepted the offer and some have entered into a settlement after negotiating terms. *Id*. Others have chosen not to settle. Those types of discussions are common and do not amount to "extortion" as counsel stated in his Declaration.

The simple fact is that Plaintiff viewed the actions of Defendant and its counsel, particularly the threat of a Rule 11 motion, as aggressive and reckless and chose to dismiss the lawsuit early rather than deal with that recklessness in a protracted litigation. Ex. A, ¶ 11, Ex. B, ¶ 10. If one is rightfully in a crosswalk and sees a reckless car approaching, one would understandably try to get out of the crosswalk. Defendant's conduct in this litigation should weigh against a finding of attorneys' fees. See, e.g., Ex. C, Stragent, WL 675304 *8 (Relying on Octane, Fogerty, and Park-In-Theatres, the court noted that "[t]he equitable force of bad conduct of the losing party may be diminished depending on the conduct of the winning party.")

## X. Conclusion

Plaintiff acted reasonably and in good faith in asserting the '090 Patent against Defendant. Defendant's claim construction argument is without merit; at a minimum, the claim construction issue is debatable. Neither Plaintiff nor any competent authority has made a determination as to whether any of Defendant's asserted prior art renders the '090 Patent invalid. Defendant aggressively threatened a Rule 11 motion against Plaintiff and its counsel. Regardless of the fact that the proposed Rule 11 motion appeared meritless, it indicated to Plaintiff that Defendant was reckless and unreasonable. Plaintiff chose to dismiss the lawsuit rather than deal with an unreasonable defendant. Defendant should not be allowed to use its questionable litigation techniques to garner a fee award that it could not extract directly from Plaintiff. When one considers the factors that support a determination of an "exceptional case," those factors do not exist here. There is nothing uncommon about Plaintiff's conduct when this lawsuit is considered as a whole. For at least these reasons, Defendant's motion should be denied.

## XI.     Relief Requested.

In view of the foregoing, Plaintiff asks that this Court deny Defendant's Cross Motion for attorneys' fees.  Plaintiff renews its request that this case, and all claims by and between the parties, be dismissed with prejudice, and that each party bear its own fees and costs.

Dated: February 8, 2016          Respectfully submitted,

/s/ Jay Johnson
**JAY JOHNSON**
State Bar No. 24067322
**BRAD KIZZIA**
State Bar No. 11547550
**ANTHONY RICCIARDELLI**
State Bar No. 24070493
**KIZZIA JOHNSON, PLLC**
750 N. St. Paul Street, Suite 1320
Dallas, Texas 75201
(214) 613-3350
Fax: (214) 613-3330
jay@kjpllc.com
bkizzia@kjpllc.com
anthony@brownfoxlaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 8, 2016.

/s/ Jay Johnson
Jay Johnson