**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC, | § § § § | |
| *Plaintiff,* | § § | |
| v . | § § | |
| GUARDIAN PROTECTION SERVICES, INC. | § § | 2:15-cv-01431-JRG-RSP **(Lead Case)** |
| ADS SECURITY, LP | § | 2:15-cv-01463-JRG-RSP |
| ALARM SECURITY GROUP, LLC | § | 2:15-cv-01464-JRG-RSP |
| CENTRAL SECURITY GROUP NATIONWIDE, INC. | § | 2:15-cv-01462-JRG-RSP |
| GUARDIAN ALARM COMPANY | § | 2:15-cv-01496-JRG-RSP |
| GUARDIAN OF GEORGIA, INC. D/B/A ACKERMAN SECURITY SYSTEMS | § § | 2:15-cv-01429-JRG-RSP |
| ICON SECURITY SYSTEMS, INC. | § | 2:15-cv-01468-JRG-RSP |
| MONITRONICS INTERNATIONAL, INC. | § | 2:15-cv-01466-JRG-RSP |
| SLOMIN'S, INC. | § | 2:15-cv-01469-JRG-RSP |
| *Defendants.* | | |

**ADS SECURITY, L.P.'S REPLY MEMORANDUM IN SUPPORT OF ITS
CROSS MOTION FOR ATTORNEYS' FEES**

## I.   Introduction

This is <u>not</u> a case of "no harm, no foul."  Requiring ADS to bear its own attorneys' fees in this case would be grossly unjust.  The most basic of pre-filing investigations by Plaintiff would have revealed both non-infringement and invalidity of Claim 1 of the '090 Patent. Plaintiff's response makes it evident that Plaintiff had no intention of testing the merits of this case, and it now argues against any real analysis of the merits, asking the Court to, in effect, create a "judicially sanctioned" exit point for it to bow out.  In a case as objectively unreasonable as this one, a plaintiff should not be allowed to impose the costs of a litigation on a defendant and then retreat when its allegations are subjected to scrutiny.

A mini-trial is not necessary.  A review of the briefs filed with this Court will quickly reveal that this case certainly "stands out from others."[1]  While Plaintiff concedes that ADS is the "prevailing party" for purposes of Section 285, ADS still loses if it is forced to pay for its own fees in a case as objectively unreasonable as this one.  Please grant ADS's Motion not only to make ADS whole, but to deter this type of activity in the future.

## II.   Studied Ignorance is No Excuse

In its response, Plaintiff's counsel makes the following declaration:

*I have not conducted an analysis of any of the prior art asserted in Defendant's Cross Motion to form a belief as to whether that prior art would invalidate the patent-in-suit.*[2]

The founder of Plaintiff echoes this statement himself.[3]

These statements evidence a conscious disregard for a party's continuing obligation to make inquiries into the merits of its case.  These statements also beg the question of how Plaintiff defines "good faith."  Particularly, it is unclear how Plaintiff and its counsel can believe

---

[1] *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).
[2] *See* Dkt. # 60-2, ¶ 5.
[3] *See* Dkt. # 60-3, ¶ 10.

in "good faith" that the "patent-in-suit is valid"[4] if neither Plaintiff nor its counsel analyzed the invalidating prior art that ADS provided to Plaintiff.

Plaintiff's "studied ignorance" cannot be used to justify a "good faith" belief in the validity of Claim 1 of the '090 Patent.  In this regard, what Plaintiff "should have known" is just as important as what Plaintiff claims to know.  As stated by the Federal Circuit in *Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805, 810 (Fed. Cir. 1990):

> The "should know" rubric obviously applies when a party attempts to escape the consequences of its conduct with the bare statement, "I didn't know." A party confronted with the difficulty of proving what is in an adversary's mind must be at liberty to prove facts establishing that that adversary should have known, i.e. to prove facts that render the "I didn't know" excuse unacceptable.

In this case, the facts render the "I didn't know" excuse unacceptable.  Particularly, the facts show:

(1) Plaintiff's counsel attests to the following: "*Plaintiff considered ADS's proposed Rule 11 motion and determined that it should not be granted.*"[5]

(2) Plaintiff attests to the following: "*RCDI considered the Rule 11 threat and determined that it should be found to be meritless.*"[6]

(3) However, nine of the fourteen Section 102 references[7] attached to ADS's Cross Motion for Attorneys' Fees were also attached to ADS's Rule 11 Motion.[8]

It is inexplicable that Plaintiff and its counsel determined that ADS's Rule 11 Motion was meritless without analyzing a single one of the nine Section 102 references cited in the Motion.

---

[4] *See* Dkt. # 60-2, ¶ 7; *see also* Dkt. # 60-3, ¶ 7 .

[5] *See* Dkt. # 60-2, ¶ 11.

[6] *See* Dkt. # 60-3, ¶ 12.

[7] Although Plaintiff's claim construction position is still unclear, ADS refers to these references at Section 102 references because they teach the very type of systems Plaintiff is accusing of infringement.

[8] *See* Dkt. # 59-5, pp. 8-28 (Exhibits 1 to 9 of ADS's invalidity contentions); *see also* Dkt. # 59-8, ¶ 7 (declaration attesting that these references were sent to Plaintiff with ADS's Rule 11 motion).

4848-1772-7534.1

Facts do not cease to exist simply because they are ignored.  And, ignored facts certainly cannot serve as the basis for an assertion that a claim is "meritless."

The presumption of validity should not serve as an excuse for failure to analyze prior art – particularly, prior art disclosing the very systems Plaintiff is accusing of infringement.  What is more disturbing is that three Section 102 references were sent to Plaintiff, with claim charts, almost a month before ADS served its Rule 11 Motion.[9]  And, at least one of these references was known to Plaintiff when it filed the Complaint against ADS.[10]  U.S. Patent No. 7,151,968 ("the '968 patent"), entitled "Intelligent Coffeemaker Appliance," was compared to Claim 1 of the '090 Patent on a limitation by limitation basis by OnStar LLC in its Counterclaims filed on May 8, 2015.[11]  Invalidating prior art does not disappear if no one looks at it.  Plaintiff should not be allowed to use ignorance as an excuse for its continued assertion of meritless claims.

## III.    Nuisance Value Settlements

The size and structure of Plaintiff's settlement payments correlate to a litigation position that lacks any substantive strength and supports a finding that Plaintiff is exploiting the high cost of complex litigation to extract nuisance value settlements.[12]  Interestingly, Plaintiff claims to have "resolved" 38 cases that assert the '090 Patent, yet Plaintiff has only produced 13 settlement agreements.  Even assuming, however, that most other defendants "apparently have agreed"[13] to settle with Plaintiff does not indicate that Plaintiff's infringement lawsuits are objectively reasonable.  Rather, it is "apparent [that] the vast majority of those that [Plaintiff]

---

[9] *See* Exhibit 2 filed herewith (copy of email and attached claim charts); *see also* Exhibit 3, ¶ 1 filed herewith (declaration attesting to these facts).

[10] *Techradium, Inc. v. Firstcall Network, Inc.*, No. H-13-2487, 2015 U.S. Dist. LEXIS 23796, at *16-17 (S.D. Tex. Feb. 27, 2015) ("The factors courts look to include whether a party knew or willfully ignored evidence of the claims' meritlessness; whether the meritlessness could have been discovered by basic pretrial investigation; or whether the meritlessness was made clear early in the litigation.").

[11] *See* Exhibit 1 filed herewith.  Plaintiff, represented by the same lead counsel in this case, answered OnStar's Counterclaims on May 29, 2015.

[12] The settlement agreements that Plaintiff has entered into are filed under seal separately as Exhibit 9.

[13] *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).

4848-1772-7534.1

accused of infringement chose to settle early in the litigation rather than expend the resources required to demonstrate [] that the asserted patent" is not infringed or invalid.[14]  As the Federal Circuit has noted, "settlement offers less than ten percent of the cost [] to defend suit effectively ensure [that] baseless infringement allegations remained unexposed."[15]

Either Plaintiff rationally believes that its invention is so groundbreaking that it would cover billions of devices[16] – in which case it is being underpaid – or Plaintiff knows that it did not invent what it purports to have invented.  In this regard, Plaintiff's intimate knowledge[17] of the costs of patent litigation – filing 139 total patent suits in 2015 (more than any other entity) – only makes Plaintiff more culpable for its actions.  Plaintiff should not be allowed to purposely turn a blind eye to the invalidity of Claim 1 of the '090 Patent and use the imposition of high defense costs to extract nuisance value settlements.

## IV.   ADS's Conduct Has Not Been Unethical

Plaintiff spends a great portion of its motion characterizing ADS's November 19th settlement offer as a "threat" "aimed at extracting payment from Plaintiff."  Plaintiff also characterizes service of ADS's Rule 11 Motion as representative of "aggressive and reckless" behavior.  Neither is true.

The November 19th email was not a threat; it was a warning.  ADS's warning put Plaintiff on notice that ADS would not be the subject of extortion.  As the Seventh Circuit has noted, "it is quite appropriate for one party to warn the other party about the possibility of a request for

---

[14] *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).

[15] *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011); *see also SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015); *see also Summit Data Sys., LLC v. EMC Corp.*, Civil Action No. 10-749-GMS, 2014 U.S. Dist. LEXIS 138248, at *12 (D. Del. Sep. 25, 2014) (finding that settlements of "no more than $175,000" are indicative of exploitation of the high costs of defense).

[16] According to businessinsider.com, there are currently 4.2 billion devices that are configurable via the internet. This number is expected to increase to 24 billion by 2020.  *See* http://www.businessinsider.com/bi-intelligence-34-billion-connected-devices-2020-2015-11 (last accessed February 15, 2016).

[17] Leigh Rothschild, founder of Plaintiff RCDI, filed more patent litigations in 2015 than any other entity.  *See* Exhibit 10 filed herewith, p. 6.

4848-1772-7534.1

4

sanctions under Rule 11, and [Courts should] not want to discourage that practice."[18]   Plaintiff's next day characterization of Plaintiff's November 19th email as a "counteroffer" confirms that – at the time – the email was not seen as a "threat" tied to extortion[19] – no more than Plaintiff's next day response that it would "consider filing its own Rule 11 Motion" be fairly characterized as an attempt at extortion.   When ADS's warning was not heeded, ADS served the Rule 11 Motion – further confirming that its warning was not a bare threat intended solely to extort money from Plaintiff.   Had Plaintiff not withdrawn its Complaint, ADS would have filed the motion.   The Rule 11 Motion was not a scare tactic – it was a justified response to Plaintiff's intentional filing of a baseless lawsuit.

Further, ADS's Rule 11 Motion was not "meritless," as Plaintiff contends.   In this regard, it is worth repeating that:

(1) Plaintiff deems the Motion as "meritless" despite admitting that it did not actually analyze a single one of the nine claim charts attached to the Motion; and

(2) That Plaintiff has been aware of at least one of those references for over six months.

The objectively unreasonable nature of Plaintiff's claims and Plaintiff's failure to make any reasonable inquiry into the facts or the law is unequivocal.   The fact that Plaintiff withdrew its Complaint was not due to a "reckless and aggressive" defendant.   Rather, withdrawing the Complaint is consistent with Plaintiff's lack of an intention to test the merits of its infringement claim.

---

[18] *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992).
[19] *See* Exhibit 6 filed herewith, November 20, 2015 email from Jay Johnson.
4848-1772-7534.1

## V.    Claim Construction

With respect to claim construction, Plaintiff grossly mischaracterizes ADS's argument as one that "centers on the meaning of 'product.'"[20]   ADS's claim construction argument did not center on the meaning of any particular claim term.   ADS's argument was simply that whatever Plaintiff's claim construction position was, it could not have reasonably believed that Claim 1 of the '090 Patent was broad enough to cover the technologies it has been asserted against and also narrow enough to overcome the overwhelming amount of prior art teaching remote product configuration.

This case does not hinge on whether or not "product" includes "non-consumable" products.   Indeed, ADS's arguments largely rely on the implied claim construction that Plaintiff has asserted that "product" does include non-consumable products.   Because Plaintiff's construction of Claim 1 necessarily has to be broad enough to cover all of the accused systems, ADS found and disclosed prior art that taught almost all of the systems that Plaintiff was accusing of infringement.   As the Supreme Court has noted, "[t]o say that an invalid patent cannot be infringed [is] a simple truth, both as a matter of logic and semantics."[21]

Nevertheless, it is important to note that Plaintiff's now-proffered claim construction of "product" is untenable.   Before the Patent Office, the invention was routinely discussed in terms of consumable liquid products and beverage dispensers.[22]   Plaintiff distinguished one reference because the recited product preferences "allow[] a user to both determine the quantity of at least one element in the product and determine the extent to which the at least one element should be

---

[20] *See* Dkt. # 60, p. 2.
[21] *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1929 (2015).
[22] *See Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1371 (Fed. Cir. 2014) ("[W]hen multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation.").
4848-1772-7534.1

mixed into the product."[23]    Plaintiff distinguished another reference because it taught

transmitting preferences to a "delivery device" instead of a "product," stating that:

> Again, Lindsay only teaches a local database in communication with a delivery
> device. No teaching or suggestion is provided for any communication to any
> component of a product.[24]

> Plaintiff further elucidated the real meaning of product by stating:

> [U]se of an actuator or mixing device would actually damage the products of
> Lindsay . . .  such as the facial tissues, diapers, and wet wipes. . . . Such materials
> would be damaged by a mixing device or actuator.[25]

With respect to Claim 1 of the '090 Patent specifically (discussed as claim 9 in the

prosecution history), Plaintiff stated the following to distinguish the prior art:

| Bartholomew et al.[26] does not disclose a first communication module within the product and in communication with the remote server. Bartholomew et al. is directed to a nail polish color selection system including a computer 18, a dispenser 12 and external receptacles 20 (FIG. 2), 40 (FIG. 3) . . . . The receptacles of Bartholomew et al. receive the different materials to form the final product, however, <u>the receptacles do not include a communication module nor pre-mixed elements</u> to be mixed based on a user's product preferences.[27] |  Bartholomew et al. Figure 2 |
|---|---|

A review of the prior art that the Patent Office cited further confirms that the invention of

the '090 Patent is limited in scope.   The patents cited by the Patent Examiner[28] include those

titled "Method and apparatus for blending and dispensing liquid compositions," "Apparatus for

---

[23] *See* Exhibit 5 filed herewith, RCDI 0039 (emphasis added).
[24] *See* Exhibit 5 filed herewith, RCDI 0019, 21.
[25] *See* Exhibit 5 filed herewith, RCDI 0019, 21.
[26] *See* Exhibit 7 filed herewith, U.S. Patent No. 7,099,740 to Bartholomew, *et al.*
[27] *See* Exhibit 5 filed herewith, RCDI 0064-65 (emphasis added).  The claim recites that the "communication module" is within the product (e.g. the nail polish receptacles).
[28] *See* Exhibit 8 filed herewith, a list of the prior art cited on the face of the '090 Patent.

providing personalized cosmetics," "Nail polish color selection system," "Nutrition dispensers and method for producing optimal dose of nutrition with the help of a database arrangement," "Method and apparatus for dispensing fluid compositions," 'Systems and methods for facilitating consumer-dispenser interactions," and "Systems and methods for monitoring and controlling the dispense of a plurality of product forming ingredients."

Further, in the only case asserting the '090 Patent outside of this District, Plaintiff describes the invention of the '090 Patent as relating to:

> [S]ystems and methods for creating a personalized beverage whereby an individual can customize a beverage using personal beverage preferences communicated over the Internet from a server to a beverage dispenser with mixing capabilities.[29]

Claim 1 of the '090 Patent simply cannot be reasonably construed to cover ADS's home automation systems or the hundreds of other systems Plaintiff has accused of infringement. And, if Claim 1 is construed to read on the technologies it has been asserted against, it is not only invalid under Section 101 and 102, it is also invalid under Section 112 for lack of enablement.

## VI.    Conclusion

This case stands out from others. The '090 Patent has been labeled "one of the four worst patents of 2015," "stupid patent of the month," "a litigation apparatus," "absurdly overbroad," "pretty silly," "a sham and embarrassment," "spectacularly mundane," a "garbage patent," and "largely gibberish."[30] It is being asserted by the most prolific filer of patent infringement litigations in 2015.[31] It is now the subject of two different *inter partes* reviews filed by

---

[29] *See* Exhibit 4 filed herewith, Dkt. # 1, ¶ 9, *RCDI v. The Coca Cola Company*, Civil Action No. 1-15-cv-24067 (S.D. Fl.).
[30] *See* Exhibit 11 filed herewith, collection of various articles.
[31] *See* Exhibit 10 filed herewith.

petitioners RPX and Unified Patents.[32]   Plaintiff has not only advanced losing arguments, Plaintiff has advanced arguments that it objectively cannot win.  No matter which way one looks at Plaintiff's rationale for this litigation, it just does not make sense.  Plaintiff has asserted a beverage dispenser patent against hundreds of different configurable devices that communicate with a network.  Plaintiff should not be allowed to simply walk away after ADS had to incur significant fees in defending itself against an infringement suit that never should have been filed.  Nor should ADS be prejudiced by its swift action to expose Plaintiff's failure to inquire into the facts and law by service of its Rule 11 Motion.  If this Court denies ADS's Motion for Attorneys' Fees, ADS still suffers, and it "effectively ensure[s that Plaintiff's] baseless infringement allegations remained unexposed."[33]   ADS again asks that this Court grant ADS's motion not only to make it whole, but to deter this type of activity in the future.

Respectfully submitted,

/s/ Nathan J. Bailey
Nathan J. Bailey (TN BPR # 026183)
        (lead attorney)
Matthew C. Cox (TN BPR # 028212)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN  37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Nate.Bailey@wallerlaw.com
Matt.Cox@wallerlaw.com

*Attorneys for ADS Security, L.P.*

---

[32] *See* Dkt. # 33, Civil Action No. 2:15-cv-01877, Notice by BMW of North America, LLC Regarding Filing of Petitions for Inter Partes Review.
[33] *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).
4848-1772-7534.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 18, 2016 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF filing system per Local Rule CV-5(a)(3).

\_\_/s/Nathan J. Bailey_____
Nathan J. Bailey

4848-1772-7534.1